UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JETAIME FLORES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No. 23 C 16260 |
| | ) |
| V. | ) |
| | ) Judge April M. Perry |
| COOK COUNTY, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S REPLY IN FURTHER SUPPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant County of Cook hereby submits its Reply in further support of its motion for summary judgment.

## INTRODUCTION

Cook County Heath (CCH), a division of Cook County, enacted its COVID-19 Vaccination Policy to combat a global pandemic. The parties agree that CCH implemented the Policy based on public health guidance, including the CDC's recommendation that vaccination was the best way to reduce transmission of COVID-19. Dkt. 52, ¶ 25. CCH determined that other mitigation methods, such as masking, social distancing and regular COVID-19, testing did not sufficiently address the patient and employee safety risk across its facilities. Dkt. 52, ¶ 35. There is no dispute that CCH granted a limited number of religious exemptions and only granted exemptions for individuals who could perform their positions on a remote basis. Dkt. 52, ¶¶ 30, 39. Plaintiff has presented no evidence that CCH made exemption decisions based on religious beliefs; rather, regardless of religious belief, CCH only granted a religious exemption if the employee could perform his or her position remotely. Dkt. 52, ¶¶ 39, 73.

Plaintiff's argument against summary judgment relies solely on the undisputed fact that, *after* Plaintiff applied for religious exemption to Employee Heath Servies, was denied the exemption, was put on a 90-day leave, participated in a pre-disciplinary hearing for non-compliance with the Policy, and was terminated five months after the pre-disciplinary hearing, individuals working in Human Resources at CCH learned that one employee (out of 5900 employees) *who did not apply for a religious exemption from the Policy to Employee Heath Services*, continued to work for CCH as a Sanitarian I (a position not at the hospital) while participating in a COVID-19 vaccine trial. Dkt. 52, ¶¶ 77-89. Because the Sanitarian I employee was not similarly situated to Plaintiff and no reasonable jury could find in favor of Plaintiff, the Court should grant summary judgment for Defendant.

## ARGUMENT

**I.     Plaintiff does not have a *bona fide* religious objection to the COVID-19 vaccine.**

Plaintiff's Response fails to identify a specific religious tenet that conflicts with the COVID-19 vaccine. Instead, Plaintiff cites to two facts: one where she admits that her religion does not prohibit vaccination (Dkt. 52, ¶ 57) and the second where, after a Google search, she states that "there was a lot of information about how all of the COVID vaccines were—used testing of aborted fetal cells." Dkt. 52, ¶ 60. Plaintiff fails to link her objection to being vaccinated to her religious beliefs. Moreover, there is no evidence that it was Plaintiff's beliefs that caused her termination: rather, CCH terminated her after it determined she could not perform her position remotely.

Plaintiff does not (and cannot) distinguish Judge Coleman's recent decision in *McCadd v. Kraft Heinz,* 2025 U. S. Dist. LEXIS 36333, *9-10 (N.D. Ill. Feb. 28, 2025), which held the plaintiff's refusal to receive the COVID-19 vaccine because it would "defile" her body stated a

concern about harm to her body, which is a medical belief, and not religious. Additionally, Plaintiff makes no mention of other recent decisions like *McDowell v. Bayhealth Med. Ctr., Inc.*, 2024 U. S. App. LEXIS 29065, *4 (3rd Cir. 2024) and *Ritter v. Lehigh Valley Health Network*, 2024 U.S. Dist. LEXIS 26883, *12 (E.D. Pa. Feb. 15, 2024) that rejected similar objections as not being "religious".

Instead, Plaintiff states that "her concern for human life" is "explicitly" religious. Dkt. 53 at 6. Defendant does not dispute that a concern for human life *can* be rooted in religion. But Plaintiff did not testify that her concern about human life was rooted in her religious beliefs. Instead, Plaintiff testified that her anti-abortion stance was because she and her husband experienced fertility issues. Dkt. 52, ¶ 63. Additionally, Plaintiff misapplies the court's reasoning in *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013), which specifically noted that the district court did not reach the religious belief or cause elements of the plaintiff's claim, instead focusing on the hardship prong, which will be discussed below. Because Plaintiff did not have a *bona fide* religious objection to the COVID-19 vaccine and because her purported religious beliefs had no effect on the decision regarding accommodation, the Court should enter judgment in favor of Defendant.

## II.    It would have been an undue burden to exempt Plaintiff from the Policy.

Plaintiff does not dispute the reason and rationale for the Policy or the implementation of the Policy. Dkt. 52, ¶¶ 7-25. Plaintiff states that the accommodation she sought was to continue masking and social distancing. Dkt. 53 at 9. But Plaintiff agrees her job duties required her to work at the hospital, in person, be in contact with vulnerable patients, members of the public and coworkers, and that it was not always possible for her to socially distance. Dkt. 52, ¶ 50. Her job duties included handing out prescriptions to patients through a window at the pharmacy, answering

3

patient inquiries, and delivering medications to nurses on a floor at Stroger Hospital treating COVID-19 patients. Dkt. 52, ¶¶ 47, 49. Plaintiff concedes that masking and social distancing is not as effective as being vaccinated against COVID-19. Dkt. 52, ¶¶ 21-25.

Plaintiff acknowledges that courts considering similar cases involving COVID-19 vaccination have upheld the firing of employees, particularly in hospital settings. Dkt. 53 at 9-10. Summary judgment was recently decided in another case, in favor of a similar defendant, where the court determined that the defendant hospital, with the information available to it at the time, could have not have reasonably accommodated the plaintiff's request to be exempted from its COVID-19 policy without suffering substantial increased costs in providing healthcare services. *Geronimo v. Melrose-Wakefield Healthcare Corp.*, No. 1:23-cv-11138-JEK, 2025 U.S. Dist. LEXIS 139786, at *12-13 (D. Mass. July 22, 2025) citing *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

In *Geronimo*, the hospital employer, like Defendant here, concluded that mandating vaccination would reduce transmission of COVID-19, and that alternatives to vaccination for healthcare workers, including social distancing, masking, and periodic testing, were insufficient. 2025 U.S. Dist. LEXIS 139786, at *12-13. This was based on the employer's experiences and the CDC's recommendations. *Id*. The hospital also determined that any increased risk of COVID-19 transmission would impede its ability to maintain adequate staffing, harm its reputation for providing safe healthcare to patients, and increase its exposure to liability related to the risk of staff-to-patient COVID-19 transmission. *Id.* The court agreed stating, "[i]n light of these undisputed facts, the hospital has demonstrated that permitting [the plaintiff] to continue working while unvaccinated would have resulted "in substantial increased costs" in connection with its business as a healthcare provider." *Id.* at *13 (citing *Groff*, 600 U.S. at 470). The court further

4

explained that "[h]ad she been permitted to continue working while unvaccinated, the hospital would have faced the increased risk of her contracting COVID-19 and transmitting the virus to its patients and staff members, thereby jeopardizing their safety. *Id.*

As these same facts are not contested here, the Court should reach the same conclusion. Plaintiff agrees that "While mitigations such as masking and testing are useful prevention tools, vaccination afforded employees with additional protection from severe illness from COVID-19. Dkt. 52, ¶ 22. Plaintiff agrees that the CDC determined that the benefits of the COVID-19 vaccine included reduced severity of symptoms and length of illness and that CCH implemented its policy based on public health guidance from federal and state public health authorities including the CDC's recommendation that vaccination was the best way to protect against severe illness, hospitalization and death, and reduced transmission of COVID-10. Dkt. 52, ¶¶ 21, 25. The Policy was also based on CCH's own experiences in 2021, where unvaccinated individuals were found to be more likely to experience serious illness or death from COVID-19, than a fully vaccinated individual. Dkt. 52, ¶ 23.

Similarly, in *Munroe v. Boston Medical Center*, No. 22-11935-FDS, 2025 U.S. Dist. LEXIS 131061, at *18-19 (D. Mass. July 10, 2025), the court found that an acute-care hospital is entitled to base its decisions on medical and scientific information, and it has an obligation to protect its patients and staff from reasonably preventable risks of infection and disease. The court noted that the First Circuit has found when "the record demonstrates that [an employer] relied on the objective, scientific information available to [it], with particular attention to the views of public health authorities," the employer "acted reasonably when it determined that vaccinated employees are less likely to transmit COVID-19 than unvaccinated employees." *Id., citing Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 91 (1st Cir. 2025).

5

Plaintiff argues that because one individual, working in the position of Sanitarian I, was permitted to work for a period of time unvaccinated, that CCH could have exempted Plaintiff from the Policy without undue burden and cites *Adeyeye* in support. But Plaintiff misapplies the court's reasoning in *Adeyeye* by suggesting that only a jury can determine undue burden. *Adeyeye* is distinguishable. Adeyeye was a factory worker who requested three weeks of unpaid leave to attend the religious burial rites of his father in Nigeria. *Id.* at 455. His employer, Heartland, expected and planned for the frequent turnover of employees by keeping a ready list of temporary workers because temporary workers staffed between half and one third of the shifts. The court highlighted that, "[w]e reach this conclusion based on the specific evidence in this case…" and "[i]n light of the evidence of high turnover, frequent use of temporary workers, and a ready supply of substitutes, a reasonable jury would not be required to find that an unpaid leave of several weeks… would have imposed an undue hardship on Heartland." *Id.* As the court explained, "[r]easonableness is assessed in context, of course, and this evaluation will turn in part on whether or not the employer can in fact continue to function absent undue hardship if the employee is permitted to take unpaid leave on the needed schedule."

The facts in *Adeyeye* are different from those uncontested here.[1] In this case, the increase in COVID-19 cases in 2020, 2021, and 2022 put a strain on hospitals including CCH, already dealing with staffing challenges, compounded by an increase in staff testing positive for the virus. Dkt. 52, ¶ 10. Throughout the pandemic, health care workers were at a greater risk than the general

---

[1] It is also noteworthy that CCH offered unpaid leave as an accommodation but Plaintiff argues that this was no accommodation. "The Supreme Court has recognized unpaid leave as a reasonable and generally satisfactory form of accommodation for religious faith and practice: 'The provision of unpaid leave eliminates the conflict between employment requirements and religious practices by allowing the individual to observe fully religious holy days and requires him only to give up compensation for a day that he did not in fact work. Generally speaking, the direct effect of unpaid leave is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status.' *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70-71 (1986)." *Adeyeye*, 721 F.3d at 455.

public of contracting COVID-19 through exposure to infected patients and other health care staff, especially those who were asymptomatic and it was far more disruptive to CCH's operations and workforce compared to other infectious diseases. Dkt. 52, ¶¶ 11, 14. Because it would have been an undue burden to allow Plaintiff to work in-person and unvaccinated against COVID-19, the Court should grant summary judgment in favor of Defendant.

### III. Plaintiff's claim of disparate treatment fails.

Plaintiff argues that since the Sanitarian I's supervisors were aware that she was participating in a COVID-19 vaccine trial, that meant that Human Resources was aware that this employee wanted to be exempted from the Policy and that Human Resources approved such exemption. Not so. Plaintiff presents no evidence to support this speculation and the undisputed facts are that the Sanitarian I never submitted an accommodation request to Employee Health Services and Human Resources never granted an exemption. Dkt. 52, ¶ 84. Plaintiff cites to *Porter v. City of Chicago* to argue the standard for a disparate treatment claim. But *Porter* is inapplicable because the court found no adverse action. 700 F.3d 944, 954 (7th Cir. 2012). To the extent Plaintiff is trying to argue the Sanitarian I was similarly-situated, that argument fails. Under the *Ortiz* framework (issued after *Porter*), a plaintiff can point to direct or circumstantial evidence of discrimination to support her claim where circumstantial evidence includes "better treatment of people similarly situated but for the protected characteristic" and "dishonest employer justifications for disparate treatment." *Richardson v. Nw. Mem'l Healthcare*, 2025 U.S. Dist. LEXIS 71431, *19-20 (7th Cir. 2025). In determining whether an employer's justification for an adverse employment action is pretextual, courts only inspect the honesty of the employer's motivation, not the wisdom of their decision. *Id.* at 20.

7

The undisputed facts are that the Sanitarian I: (1) did not work in-person at the hospital; (2) did not submit a request for accommodation; (3) Human Resources never evaluated an accommodation request from this employee, and (4) there is no record of this individual receiving an exemption from the Policy. Dkt. 52, ¶¶ 77, 78, 84. Plaintiff was not similarly-situated to the Sanitarian I. *See Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (holding that a court must look at all relevant factors to assess whether a comparator is similarly situated, including whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision). Here, Plaintiff and the Sanitarian I had different positions and reported to different supervisors at different locations. Importantly, and unlike Plaintiff, since the Sanitarian I never sought an accommodation from the COVID-19 vaccine, EEO Director Nicholas Krasucki never evaluated a request for accommodation and never granted this employee an accommodation. Dkt. 52, ¶ 84. Plaintiff can point to no similarly-situated individual who was treated better.

Plaintiff finds fault with Human Resources' incorrect conclusion in June 2022 that the Sanitarian I had been vaccinated when that employee tested positive for COVID-19 antibodies. Dkt. 59 at 11. It was reasonable for Human Resources to conclude that the Sanitarian I had already been vaccinated, because the employee participated in a vaccine study, did not express an objection to vaccination, and did not request an exemption from the Policy. Dkt. 52, ¶¶ 78, 84. Nonetheless, there is no evidence that this incorrect assumption altered Human Resources' decision-making regarding accommodation requests: rather, it appears that this is a paperwork issue where Human Resources was gathering proof of vaccination for all 5900 employees rather than analyzing whether the Sanitarian I could receive an accommodation (that was never sought).

8

*See Cloutier v. Costco Wholesale Corp.*, 390 F. 3d 126, 137 (1st Cir. 2001) (finding the plaintiff's assertion that it would not be an undue burden for the defendant to relax its dress code because it "allowed" other employees to have facial piercings unpersuasive because it implies that the defendant was aware of the piercings when constant monitoring of several hundred employees would be impossible). Plaintiff has no evidence of disparate treatment and the Court should enter judgment in favor of Defendant.

## CONCLUSION

Defendant respectfully requests this Honorable Court grant Defendant's Motion for Summary Judgment and for any other relief it deems appropriate.

Dated: September 2, 2025

Respectfully submitted,
EILEEN O'NEILL BURKE
State's Attorney of Cook County

By: */s/ Kathleen Ori*
Kathleen Ori
Colleen Harvey
Assistant State's Attorney
Labor and Employment Section
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-4635
kathleen.ori@cookcounysao.org
colleen.harvey@cookcountysao.org