## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JETAIME FLORES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-CV-16260 |
| v. | ) | |
| | ) | Judge April M. Perry |
| COOK COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Jetaime Flores ("Plaintiff") brought this employment discrimination action against Cook County ("Defendant"), alleging that Defendant's COVID-19 vaccination policy violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 ("Title VII"). Doc. 19. Before this Court is Defendant's motion for summary judgment. Doc. 50. For the following reasons, Defendant's motion is granted.

## BACKGROUND

Defendant operates Cook County Health ("CCH"), which with 5,900 employees is one of the largest public health systems in the country. Doc. 52 ¶ 2. CCH provides a range of health care services, including operating John H. Stroger Jr. Hospital ("Stroger Hospital"). *Id*.

Between 2020 and 2022, the COVID-19 pandemic put a significant strain on CCH's operations. *Id.* ¶ 10. By 2022, CCH had cared for more than 2,000 hospitalized COVID-19 patients, provided more than 300,000 COVID-19 tests, and administered over one million doses of the COVID-19 vaccine. *Id.* ¶ 15. Throughout the pandemic, health care workers were at a greater risk than the general public of contracting COVID-19 through exposure to infected patients and other health care staff. *Id.* ¶ 11.

On August 16, 2021, CCH implemented its Mandatory COVID-19 Vaccination for Personnel Policy ("Policy"). *Id.* ¶¶ 24-25. The Policy required staff members to either receive a COVID-19 vaccine or request an exemption by October 1, 2021. *Id.* ¶¶ 24, 27. To request a religious exemption, an employee had to submit a written application to Employee Health Services identifying a "sincerely held religious belief, practice or observance." *Id.* ¶ 26. In September 2021, CCH decided that it would only grant religious exemptions "to employees whose duties could be performed on a fully remote basis." *Id.* ¶ 30. Approximately 102 employees requested religious exemptions. *Id.* ¶ 29. Only the nine employees who were able to work fully remotely had their exemption requests granted. *Id.* ¶ 39. Employees who were denied exemptions because their jobs required them to work in person were given ninety days of unpaid leave to attempt to find remote positions within CCH. *Id.* ¶ 40.

Plaintiff was employed by CCH as a pharmacy technician from 2016 to 2022. *Id.* ¶ 1. In 2021, Plaintiff worked in the outpatient pharmacy at Stroger Hospital. *Id.* ¶ 44. During each shift, Plaintiff worked in one room with thirty to forty other pharmacists and pharmacy technicians. *Id.* ¶ 46. Plaintiff's role included receiving and handing out prescriptions to patients through a window, answering patient inquiries, accepting and typing in electronically received prescriptions, and delivering medications to nurses on a floor caring for COVID-19 patients. *Id.* ¶¶ 47-50. Plaintiff's job duties could not be performed fully remotely. *Id.* ¶¶ 51-52.

On August 30, 2021, Plaintiff submitted a request to Employee Health Services seeking a religious exemption from the COVID-19 vaccination policy. Doc. 52-6 at 2. Plaintiff submitted the following explanation for her need for a religious exemption:

> I am requesting a religious exemption from the Covid-19 vaccination mandate. I am a follower of Jesus Christ who believes The Bible is the inspired Word of God (John 1:1). I believe that innocent life, including that in a mother's womb, is sacred to God, from conception, to birth, to natural death (Psalm 193:13-16). Receiving a vaccine made from aborted fetuses supports an activity that offends my faith, therefore I cannot partake of this vaccine directive.

2

> Currently all three of the vaccines available were developed or tested using fetal cell lines which started from aborted fetuses. These vaccines were proved by protein testing using the abortion-derived cell line HEK-293. (https://lozierinstitute.org/an-ethics-assessment-of-covid-19-vaccine-programs/)
>
> Additionally I am asking, as is my right under Title VII of the Civil Rights Act of 1964, that you provide a reasonable accommodation. I would like to continue to be a good employee here. I will adhere to wearing a face mask during this timeframe to avoid risk of infection and the spread; I will continue to remain socially distanced per the requirements while on company grounds; I will attest daily to being symptom free or use accrued time off when feeling symptomatic.
>
> I have conferred with the Lord through prayer (James 1:5) and believe that I should respect the body God has given me and rely on Him in every way (1 Corinthians 3:16-17).

*Id.* In later testimony, Plaintiff explained that she and her husband oppose abortion because they have struggled with fertility. Doc. 52 ¶ 63. Plaintiff also testified that she had been concerned about the COVID-19 vaccine being new. *Id.* ¶ 64. Plaintiff had not previously sought a religious exemption for any other vaccines mandated by CCH. *Id.* ¶ 53.

On September 24, 2021, CCH sent Plaintiff a letter denying her request for a religious exemption. *Id.* ¶ 69. The letter explained that unvaccinated personnel were "a threat to the safety or our patients, staff, visitors and [Plaintiff], and exempting [Plaintiff] from the CCH vaccination requirement would compromise workplace safety, infringe upon the rights of our workforce, patients, and visitors, and otherwise would pose an undue hardship to CCH." *Id.* The letter further informed Plaintiff that effective October 1, 2021, employees who had not received the first shot of the vaccine could not work on site. *Id.* ¶ 70.

Despite this, Plaintiff did not obtain the COVID-19 vaccine. CCH granted Plaintiff ninety days of unpaid leave to seek another position within CCH. *Id.* ¶ 72. On January 25, 2022, CCH held a pre-disciplinary hearing on charges that Plaintiff was in violation of CCH's personnel rules for failing to comply with the mandatory COVID-19 vaccination policy. *Id.* ¶ 75. On January 28, the

3

hearing officer who presided over the pre-disciplinary hearing recommended Plaintiff's termination. *Id.* On May 18, 2022, CCH terminated Plaintiff's employment. *Id.* ¶ 76.

## LEGAL STANDARD

Summary judgment is proper when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, if that occurs the nonmoving party must present facts showing there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the court must construe the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor, this obligation does not extend to drawing inferences that are supported by only speculation or conjecture. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

## ANALYSIS

Plaintiff argues that Defendant violated Title VII by failing to accommodate her religious beliefs and subjecting her to disparate treatment based upon her religion. Defendant asserts that it is entitled to summary judgment because (1) Plaintiff cannot establish the existence of a sincerely held religious belief protected by Title VII, (2) allowing Plaintiff to continue to work in

person would have created an undue hardship for Defendant, and (3) there is no evidence that any other similarly situated employee received more favorable treatment under the Policy.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 802 (7th Cir. 2025) (internal citation omitted). To establish a failure-to-accommodate claim, a plaintiff must show: (1) she had a sincerely held religious belief or practice that conflicted with her employer's requirements; (2) the plaintiff notified her employer of the religious belief or practice; and (3) the need for a religious accommodation was a motivating factor in an adverse employment decision. *Id.* Once the plaintiff makes this showing, "the burden shifts to the employer to show that any reasonable accommodation would result in undue hardship." *Id.* at 803.

The Court begins with Defendant's argument that Plaintiff has failed to connect her objection to the COVID-19 vaccine with a sincerely held religious belief. At summary judgment, plaintiffs "carry a low burden to establish that they truly hold certain beliefs" and must only show that "(1) the belief for which protection is sought is religious in the person's own scheme of things and (2) that it is sincerely held." *Kluge*, 150 F.4th at 811 (cleaned up). A plaintiff's burden is low because courts "are not arbiters of scriptural interpretation." *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 716 (1981); *Kluge*, 150 F.4th at 811 (noting that "courts

5

should avoid putting themselves in the impossible position of trying to define religious legitimacy and viewpoint sufficiency" because courts "do not have the expertise to evaluate whether particular religious practices or observances are necessarily orthodox or even mandated by an organized religious hierarchy." (cleaned up)); *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013) ("We are not and should not be in the business of deciding whether a person holds religious beliefs for the 'proper' reasons.").

Here, Plaintiff has met her low burden of establishing a sincerely held religious opposition to the COVID-19 vaccine. Plaintiff wrote in her exemption request that "[r]eceiving a vaccine made from aborted fetuses supports an activity that offends my faith." Doc. 52-6 at 2. Although Plaintiff later testified that she was afraid of the COVID-19 vaccine because it was new and that she was opposed to abortion because of her own fertility issues, Doc. 52 ¶¶ 63-64, it is not required that religious belief be the only force behind a plaintiff's objection to an employer demand, so long as a plaintiff's objection is "at least in part" based upon religious belief. *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024). Given that the Court is required to view all evidence in the light most favorable to Plaintiff and that credibility questions must be resolved in Plaintiff's favor, Plaintiff has done enough for the purposes of summary judgment to demonstrate that she had a sincerely held religious belief that prevented her from being vaccinated.

Defendant next argues that exempting Plaintiff from the COVID-19 vaccine mandate would have caused it undue hardship because Plaintiff's job could not be performed remotely and necessarily included direct contact with patients and coworkers. An accommodation causes undue hardship where an employer faces "substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). Such an inquiry is fact- and

context-specific, and courts must consider "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Kluge*, 150 F.4th at 803 (cleaned up). An employer must "demonstrate an objective undue hardship on its business, not one just subjectively perceived." *Id.* at 808. That said, when undertaking hardship analysis, "an employer is permitted to draw conclusions based on evidence and information ... available at the time." *See Henry v. S. Ohio Med. Center*, 155 F.4th 620, 632 (6th Cir. 2025)). The defendant bears the burden of proof of showing "that any and all accommodations would have imposed an undue hardship." *Adeyeye*, 721 F.3d at 455.

A hospital's business is protecting and promoting health. In fact, the parties in this case have agreed that "CCH has a responsibility to provide the safest care possible for patients." Doc. 52 ¶ 17. During the COVID-19 pandemic, CCH faced an unprecedented challenge trying to protect its patients and staff from a new and deadly virus. Healthcare workers were at a greater risk than the general public of not only contracting COVID-19 themselves, but also of spreading it to high-risk patient populations. *Id.* ¶¶ 11, 33. During this same time, CCH faced staffing shortages and could ill-afford to have their employees taking long quarantine leaves. *Id.* ¶ 10. Once the COVID-19 vaccine was available, Defendant determined that earlier mitigation methods, such as masking, social distancing, and regular COVID-19 testing, were not the best means of addressing these risks. *Id.* ¶ 35. It is undisputed that based upon the medical guidance available at the time, Defendant implemented its mandatory vaccination policy believing that "vaccination [was] the best way to protect against severe illness, hospitalization and death, and the best way to reduce transmission" of COVID-19. *Id.* ¶¶ 25, 32.

Although Plaintiff claims that it would not have been an undue hardship for her to continue to work unvaccinated so long as she work a mask and socially distanced, this is inconsistent with her agreement that CCH's duty was to provide patients with the "safest care possible" and that medical experts believed vaccination to be the best way to reduce transmission of COVID-19. Doc. 52 ¶¶ 17, 32. Plaintiff's job required her to work in the same room with thirty to forty pharmacists and pharmacy technicians. *Id.* ¶ 46. Plaintiff also interacted with patients and delivered medications to nurses on a floor caring for COVID-19 patients. *Id.* ¶ 46, 48-49. Based on these facts, there is no genuine dispute that allowing Plaintiff to continue as a pharmacy technician without the COVID-19 vaccine would have created an undue hardship for CCH's operations, its patients, and its staff. Consistent with the other courts in this district that have granted summary judgment on similar facts, the Court finds that Defendant is entitled to summary judgment because no reasonable accommodation was available consistent with Defendant's obligation to promote staff and patient safety. *See, e.g., Hassett v. United Airlines, Inc.*, 23-CV-14592, 2025 WL 3268667, at *8 (N.D. Ill. Nov. 24, 2025) (finding that United Airlines could not reasonably accommodate pilot's religious exemption request without undue hardship); *Mason v. Cook Cnty.*, No. 23-CV-16339, 2025 WL 2576811, at *4 (N.D. Ill. Sept. 5, 2025) (finding that Cook County Health could not reasonably accommodate plaintiff without undue hardship because allowing plaintiff to continue working as a hospital pharmacist while unvaccinated would have jeopardized the health of staff and patients).

This Court is not persuaded by Plaintiff's argument that *Adeyeye* stands for the proposition that undue hardship must always be a jury question. In *Adeyeye*, a factory worker requested three weeks of unpaid leave to attend burial rights for his father in Nigeria and the Seventh Circuit found a genuine dispute as to whether providing the leave would result in undue

hardship for the employer because there were facts in the record that showed that the employer expected and planned for the frequent turnover of employees by keeping a ready list of temporary workers who could report to work within an hour. *See Adeyeye*, 721 F.3d at 455. In contrast, here there is no evidence that CCH was able to absorb losses of its workers – to the contrary, the undisputed evidence is that CCH was dealing with staffing shortages. Doc. 52 ¶ 10. Moreover, the stakes in this case were significantly higher than in *Adeyeye* because what was at risk was not factory productivity, but people's lives. In short, all of the facts in this record demonstrate an undue hardship on Defendant in allowing Plaintiff to work in-person unvaccinated.[1]

Nor is the Court persuaded that Defendant's undue hardship is disputed because a different employee employed by a different entity in a different position was not vaccinated by the deadline. That employee, referred to by the parties as "Sanitarian I," was employed by the Cook County Department of Public Health ("CCDPH"), an affiliate of CCH, never sought a vaccine exemption, was not vaccinated by the October 1, 2021 deadline, and was not terminated. Doc. 52 ¶¶ 77, 80, 88.[2] However, Plaintiff has not provided any facts from which the Court could reasonably infer that Sanitarian I worked in-person rather than remotely, or if in-person, worked in close proximity to hospital staff or patients. Therefore, even when drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude that the unvaccinated Sanitarian I posed

---

[1] Plaintiff seems to agree that, although she was given ninety days to find a remote job for which she was qualified, no such job existed. Doc. 53 at 8.

[2] The parties agree that Sanitarian I notified her CCDPH supervisors that she was part of a clinical trial for a COVID-19 vaccine, and therefore did not know whether she had received an experimental vaccine or placebo. Doc. 52 ¶ 78. Although Sanitarian I was told to notify Employee Health and seek an exemption, she seemingly did not do so. *Id*. ¶ 79. CCH did not become aware of Sanitarian I's possibly unvaccinated status until 2022, and did not determine that she was in the placebo group until October 2022, at which time Sanitarian I received the first of her COVID-19 vaccinations. *Id*. ¶¶ 85-88.

a hardship to health and safety in a way that undercuts Defendant's showing of undue hardship with respect to Plaintiff. Defendant bears the burden of demonstrating that it would have been an undue hardship to provide *Plaintiff* a reasonable accommodation. As is discussed above, Defendant has done so. To the extent Plaintiff believes that some other employee's circumstances disprove the proffered undue hardship, she must point to evidence in the record, rather than just speculate that such evidence exists. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

For these same reasons, the Court does not find that Sanitarian I provides support for Plaintiff's claim of religious discrimination arising under a disparate treatment theory. To establish a Title VII violation based upon a theory of disparate treatment, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022).[3] An employee is similarly situated when they are "directly comparable to [the plaintiff] in all material respects so as to eliminate all other possible explanatory variables." *Crain v. McDonough*, 63 F.4th 585, 592 (7th Cir. 2023).

Here, Plaintiff argues that she was similarly situated to Sanitarian I, and the only possible explanation for their different treatment is religious discrimination. Doc. 53 at 13. But, as discussed above, Plaintiff provides no facts from which the Court can conclude that Sanitarian I was similarly situated to Plaintiff. Plaintiff claims that the Court should assume that Sanitarian I

---

[3] Of course, disparate treatment is not the only way to prove discrimination. As *Ortiz v. Werner Enterprises, Inc*. noted, the totality of the evidence should also be evaluated to determine whether there is evidence from which a reasonable factfinder could conclude discrimination caused the adverse employment action at issue. 834 F.3d 760, 766 (7th Cir. 2016). But in this case, Plaintiff points solely to disparate treatment in support of her claim of discrimination.

worked in person at a hospital "given the County's refusal to provide almost any information about this employee." Doc. 53 at 14. But the Court is not aware of Defendant having refused to provide information Plaintiff needed to prove her case. Although Plaintiff filed a motion to compel on this topic, Doc. 35, she later withdrew it, Doc. 37. If Plaintiff did not receive information she needed in discovery, it was incumbent upon her to alert the Court of this fact. Based upon this evidentiary record, no reasonable factfinder could conclude that Plaintiff has met her burden that Sanitarian I was similarly situated to Plaintiff. *See Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021). Summary judgment in Defendant's favor is therefore appropriate.

## CONCLUSION

Defendant's motion for summary judgment is granted.


Dated: December 19, 2025

_____
APRIL M. PERRY
United States District Judge